ANNA GRIFFIN (BY JOHN GRIFFIN, HER NEXT FRIEND)
v. JERSEY CITY, HOBOKEN AND PATERSON STREET
RAILWAY COMPANY, AND WILLIAM A. HEINEY AND
MORRIS HEINEY.

Argued June 13, 1905—Decided June 11, 1906.

Where, in an action of tort, the clear weight of the evidence is against the verdict of the jury, upon any theory under which liability is claimed in the declaration, as well as upon any theory which may account for the accident under all the proof in the cause, a new trial should be granted.

---

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices FORT and REED.

For the plaintiff, *Weller & Lichtenstein.*

For the defendant railway company, *Bedle, Edwards & Thompson.*

For the defendants Heiney, *Collins & Corbin.*

The opinion of the court was delivered by

FORT, J. On the 26th day of November, 1904, Anna Griffin, the plaintiff, with her mother, was a passenger on a

trolley car of the defendant the Jersey City, Hoboken and
Paterson Street Railway Company, and while thus in the car
she was injured by flying glass going into one of her eyes,
which caused the destruction of the eye.

The accident which caused the glass to fly occurred when
the car was passing along New York avenue, in Jersey City,
in front of the warehouse of William A. Heiney and Morris
Heiney, partners trading as Heiney Brothers, the other de-
fendants in this case.

The time of the accident was about seven o'clock in the
evening. At that hour it was shown to be dark. The electric
street lights were lighted, as well as the electric lights in the
trolley car.

The Heiney Brothers are the owners of trucks, upon which
they transport their produce from the railroad station to their
warehouse.

On the night in question one truck at least was standing
upon the street in front of their place of business. The wit-
nesses differ as to the number of trucks standing upon the
street—some say one, some two and some three. All agree
that only one truck was being unloaded at the time. It was
loaded with cabbages. The truck weighed about two thou-
sand pounds and the load about twenty-eight hundred pounds.

The roadway of the street at this point is shown to have
been twelve feet five inches between the curb and the nearest
rail of the track upon which the car was in which the plaintiff
was injured.

The speed of the car is stated by the motorman as from
seven to eight miles, and by others as very fast, at the time
of the accident.

The proof shows that the accident happened in one of two
ways—either by the car running against the truck as it stood
extended from the curb, or by a pole which was a part of the
truck, being pushed or held out, or carelessly laid where it
extended out, so that it hit the car as it passed.

The declaration is framed upon the theory and alleges that
the defendant trolley company negligently ran its car against
the truck as it stood on the highway, and that the defendants

the Heiney Brothers negligently left the truck standing in such a position upon the street that the trolley car could not pass it, upon its tracks, without hitting it. The declaration makes no point of a pole being negligently extended from the truck in such a way that it would hit a passing car, nor did the plaintiff make such a claim on the principal case.

No one upon the car testified with certainty just how the accident did occur, although two passengers did say they saw a pole, or, from the shadow, what seemed to be a pole, protrude into the car through the glass in the window.

The consideration of this case has necessitated the very critical reading of the entire evidence. From such reading the clear weight of the evidence must lead one to the conclusion that the truck was standing with side wheels at the curb, and parallel with the curb. Either this is true or the evidence is not to be believed, and there is nothing to justify us in discarding it, nor, so far as we can see, was there anything to justify the jury in so doing. It is therefore not possible to sustain a verdict against the trolley company on the basis of negligently running into the step, or seat, or any part, of the truck. Nor is it proper, under the proof, to hold the trolley company for negligently running into a pole extending from the truck, if it be conceded that the proof would sustain a finding that the accident happened by reason of that fact.

It was dark. The pole was small. If it was put out it must have been done just as or just before the car hit it. All the proof seems to sustain this view. The testimony of the motorman and other witnesses—in fact, the weight of the proof—is that the first striking of the car seemed to be at the first window, in front, after passing the platform. The motorman and other witnesses say the glass in the front of the front platform was not broken, and that the woodwork was not hit. If this is true, then there was certainly nothing within the vision of the motorman for him to see to have caused it to be negligence for him not to stop his car to prevent the car coming in contact with it.

It is true that there is proof in the case of the violent

nature of the impact between the car and whatever it was that caused the breaking of the window. But this, standing alone, cannot be said to overcome the great weight of the evidence that the truck itself was not hit by the car. Nor did the accident itself, if it be conceded to have been caused by the extended pole, justify the jury in finding, or this court in saying, that the pole must have been out where the motorman could have seen it. There is evidence that the pole was pushed into the car as it passed along, and in the face of this fact we cannot see how negligence can be imputed to the trolley company for the failure of the motorman to see a pole, which, under the proof, it is as reasonable a theory to say was not there as it is to say that it was.

On the whole case, it seems clear that as to the Jersey City, Hoboken and Paterson Street Railway Company, the verdict is clearly against the weight of the evidence.

Can the verdict stand as to the Heiney Brothers?

What we have said as to the weight of the evidence as to the truck standing in the street, so that the car could strike it, of course, applies with equal force, as to the alleged negligence in this respect of the Heiney Brothers.

But it is claimed that the verdict should stand against the Heiney Brothers because it was a person put upon the wagon by them, or their agent, who negligently caused the pole to be extended.

During the trial, the theory of the accident being the result of the extending of a pole over the side of the truck came out, and there was proof that the pole was lying on top of the truck just before the accident, and that a man named Evans was upon the truck and had the pole in his hands at and just after the accident. In fact, one witness declared that he took the pole from him after the accident. Evans admitted he was upon the wagon, but denied having the pole. At least three witnesses who could see testify that he did have it. The Heineys also denied that he was employed by them, or that he was upon the truck by their solicitation, or in any other way than as a mere volunteer or trespasser.

On this phase of the case Mr. Justice Dixon left this question to the jury, in the charge, with these observations:

"Those are matters that you are to consider in weighing his (Evans') testimony, together with the testimony of others; but, I say, in order to hold the Heiney Brothers responsible for his conduct, his neglect, his mistakes, while he was on the wagon, it must appear that he was in their service, and as a servant or employe, not a mere volunteer of his own accord. If as a volunteer he jumped upon the wagon and managed this pole and so caused the accident, the Heiney Brothers are not responsible for that; but if they did, either of them, or persons having authority in their service, put him at work on that wagon to throw out cabbages, and in that service he made the mistake of taking the pole out of its place or handling it so that it came into collision with the car upon the highway, then if that was careless in him—if that was a lack of reasonable care in him—the Heiney Brothers would be responsible for the misfortune."

The verdict in the case being against both defendants, and not being special, so that we can know upon what ground it was placed, we are, of course, unable to say what effect this feature of the case had upon the jury in arriving at its verdict. But it seems to us, as we view the proof, this phase might have been the controlling one.

On this branch of the case, under the evidence, there is also great conflict in the proof. Evans was a man of thirty-nine years of age, and yet of as immature mind as a very young child. He does not know his own age, nor the year, month, week or day of this accident. He testified he never learned anything; that he could not learn; that he just sits around the house all the time. He does nothing and is supported by his parents. He is evidently a man of very little mentality. That, of course, does not justify even the intimation that he does not tell the truth, but it does justify the court in saying that his evidence should not be alone accepted against the testimony of many others—against the great weight of all the other evidence in the cause.

We think as to both defendants, and on both branches of the case, the weight of the evidence is with the defendants.

The damages are also said to be excessive. We think they are. In this case a verdict of $15,000 for the loss of an eye, without resultant injury to the other eye, is excessive.

For all these reasons, the rule to show cause will be made absolute as to both defendants.